# **EXHIBIT A**



NYSCEF
New York County Supreme Court

**Document List**

Index #  **650627/2020**

Created on:03/24/2020 07:02 AM

Case Caption:   **Pine Management, Inc. v. Certain Underwriters at Lloyd's, et al**
Judge Name:

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 1 | SUMMONS | Processed | 01/28/2020 | Nolan, D. |
| 2 | COMPLAINT | Processed | 01/28/2020 | Nolan, D. |
| 3 | AFFIRMATION/AFFIDAVIT OF SERVICE | Processed | 02/11/2020 | Nolan, D. |
| 4 | AFFIRMATION/AFFIDAVIT OF SERVICE | Processed | 02/11/2020 | Nolan, D. |
| 5 | COMPLAINT (AMENDED) - *Corrected* | Returned For Correction | 03/16/2020 | Nolan, D. |
| 6 | EXHIBIT(S)<br>Policy | Processed | 02/24/2020 | Nolan, D. |
| 7 | NOTICE OF APPEARANCE (PRE RJI) | Processed | 03/13/2020 | Yagoobian, C. |
| 8 | STIPULATION - DISCONTINUANCE (PRE RJI)<br>Joint Stipulation of Discontinuance as to Hiscox, Inc. | Processed | 03/13/2020 | Yagoobian, C. |
| 9 | RJI -RE: OTHER<br>So-Ordered Stipulation | Pending | 03/17/2020 | Nolan, D. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| PINE MANAGEMENT, INC.,<br><br><div align="center">Plaintiff,</div><br>-against-<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO CERTIFICATE NO. MPL 1690585.16, and HISCOX, INC.,<br><br><div align="center">Defendants.</div> | Index No.<br><br>**SUMMONS**<br><br>Plaintiff designates New York County as the place of trial.<br><br>Venue is based upon, among other things, the County where Plaintiff's principal place of business is located. |

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on Plaintiff's attorneys within twenty (20) days after the services of this summons exclusive of the date of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
      January 28, 2020

ANDERSON KILL, P.C.

By: _____

  Dennis J. Nolan, Esq.
Attorneys for Plaintiff
1251 Avenue of the Americas
New York, NY 10020
T: 212-278-1000

TO:     CERTAIN UNDERWRITERS AT
       LLOYD'S, LONDON and CERTAIN
       LONDON MARKET COMPANIES
       SUBSCRIBING TO CERTIFICATE
       NO. MPL 1690585.16
       520 Madison Ave., 32nd Fl.
       New York, NY 10022
       Attn.: Head of Claims

       HISCOX, INC.
       520 Madison Ave., 32nd Fl.
       New York, NY 10022
       Attn.: Head of Claims

Case 1:20-cv-02491   Document 3-1   Filed 03/24/20   Page 5 of 67

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PINE MANAGEMENT, INC., <br><br>                            Plaintiff, <br><br>         -against- <br><br> CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO CERTIFICATE NO. MPL 1690585.16, and HISCOX, INC. <br>                                 Defendants. | Index No. _____ <br><br><br> **<u>JURY TRIAL DEMANDED</u>** |

## <u>COMPLAINT</u>

Plaintiff, Pine Management, Inc. ("Pine Management"), by and through its attorneys, Anderson Kill P.C., for its complaint against Defendants, Certain Underwriters at Lloyd's, London and Certain London Market Companies Subscribing to Certificate No. MPL 1690585.16 ("Lloyd's") and Hiscox, Inc. ("Hiscox", and together with Lloyd's, "Defendants"), alleges and states as follows:

### <u>NATURE OF THE ACTION</u>

1.     This is an insurance coverage action against Defendants for breach of contract arising out of Defendants' refusal to honor their coverage obligations under the Real Estate and Property Managers Professional Liability Insurance Policy that Defendants sold to Pine Management.

2.     Pine Management brings this action to recover damages for Defendants' unreasonable refusal to pay covered "claim expenses" of at least $535,000.00 that Pine Management incurred during the course of defending two actions filed against it and other "insureds" under the Policy (defined below) in 2017, as well as covered "damages" of at least $820,000.00 in interest.

docs-100232066.1

3.      Defendants consented to Pine Management's retention of counsel to defend against the Underlying Actions (defined below) and approved hourly rates for the defense. However, Defendants did so under a reservation of rights to deny or limit coverage to Pine Management. This reservation of rights created a conflict of interest that triggered Pine Management's right to select counsel of its own choosing to direct the defense of the Underlying Actions at the Hiscox-approved rates.

4.      Several months into the defense of the Underlying Actions, Pine Management determined that it could best accomplish a prompt, successful and satisfactory resolution of the Underlying Actions by retaining new counsel, who adopted a transactional posture and managed to resolve the Underlying Actions via an appraised buyout of the plaintiffs' interests. New counsel achieved an expeditious resolution of the matter that not only reduced the overall attorneys' fees that Pine Management would have incurred, and which Defendants would have been obligated to reimburse, but also reduced Defendants' potential indemnification obligation.

5.      At the conclusion of the Underlying Actions, Pine Management submitted invoices for new counsel's legal fees, as well as associated expert fees, to Defendants and sought reimbursement of these "claim expenses" at the Hiscox-approved rates.

6.      Despite Defendants: agreeing to provide Pine Management with a complete defense for the Underlying Actions; acknowledging Pine Management's right to hire independent counsel; saving significant sums because of Pine Management's strategy through independent counsel; and otherwise suffering no prejudice, Defendants refused, and continue to refuse, to reimburse Pine Management's "claim expenses" and "damages", which are indisputably covered under the Policy.

–2–

## THE PARTIES

7.       Plaintiff Pine Management, Inc. is a New York corporation with its principal

place of business at 78 Manhattan Avenue, New York, New York 10025-4676.

8.       Upon information and belief, Defendant Certain Underwriters at Lloyd's London

and Certain London Market Companies Subscribing to Certificate No. MPL 1690585.16 are

entities that are or were underwriting members of Lloyd's that subscribed to the Lloyd's Policy

and reside outside of the United States.

9.       Upon information and belief, Defendant Hiscox Inc. is an insurance company

organized under the laws of Delaware with its principal place of business at 520 Madison

Avenue, 32nd Floor, New York, New York 10022.

## JURISDICTION AND VENUE

10.       This Court has jurisdiction over Defendants pursuant to CPLR § 301 or § 302,

because, upon information and belief, Defendants, at all relevant times, were corporations

authorized to transact business in the State of New York and/or that operated, conducted,

transacted, engaged in or carried on a business or business ventures in New York; the business at

issue was transacted in New York and bears a substantial nexus with this action; and because

Defendants engage in substantial business within New York.

11.       The Commercial Division of this Court has jurisdiction under 22 NYCRR §

202.70 because, among other things, this is a breach of contract action involving commercial

insurance coverage and the amount in controversy exceeds the monetary threshold of $500,000.

12.       Venue is proper in this Court pursuant to CPLR § 503 because Pine Management

and Hiscox have their principal offices in New York County.

—3—

docs-100232066.1

# FACTUAL BACKGROUND

I.    <u>**The Policy**</u>

13.    Defendants sold Pine Management Real Estate and Property Managers Professional Liability Insurance Policy Number MPL 1690585.16, a true and correct copy of which is attached hereto as Exhibit A (the "Policy"), for the policy period of October 20, 2016 through October 20, 2017.

14.    The Policy, a claims-made and reported policy, has a $1,000,000 limit of liability per professional liability claim and in the aggregate.

15.    Pine Management, and any "partner, director, officer or board member" while in the course of their performance of "professional services" on behalf of or at the direction of Pine Management, constitute "Insureds" under the Policy.

16.    By the Policy, Defendants agreed to pay "**damages** and **claim expenses**[1] in excess of the **retention** for covered **claims** against" an Insured "alleging a negligent act, error or omission in **your professional services** performed for any property, whether or not owned by **you**…"  The Policy, Section I, "What is covered".

17.    The Policy defines "**damages**" to include "the following amounts in excess of the **retention**:

> 1.  a monetary judgment or monetary award that you are legally obligated to pay (including pre- or post-judgment interest and awards of claimant's attorney fees); or
>
> 2.  a monetary settlement negotiated by us with your consent."

18.    The Policy defines "**Claim expenses**", in pertinent part, as "the following sums incurred in excess of the retention and with our prior written consent:

---

[1] The terms herein that are bold faced are defined terms in the Policy.

docs-100232066.1

1. all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and experts) incurred in the investigation, defense, or appeal of a claim;"

19.     The applicable "**retention**" under the Policy is $5,000.00.

20.     The Policy defines "**claim**" as "any written assertion of liability or any written demand for financial compensation or nonmonetary relief."

21.     The Policy defines "**professional services**" as "**real estate services**" and/or "**property management services**." In turn, "**real estate services**" means: "real estate agent, broker, and/or leasing services, including any services as a notary public performed in conjunction with such real estate agent, broker, and/or leasing services, and any other services identified as Covered Professional Services under the Real Estate and Property Managers Professional Liability Coverage Part section of the Declarations." "**Professional management services**" means:

1. development and implementation of management plans and budgets;

2. oversight of physical maintenance of property;

3. solicitation, evaluation, and securing of tenants, management of tenant relations, collection of rent, and processing evictions;

4. development, implementation, and management of loss control and risk management plans for real property;

5. development, procurement, implementation, and management of contracts and subcontracts necessary to the daily functioning of real property;

6. personnel administration and record keeping;

7. leasing services in connection with the property you are managing; and/or

8. any other services identified as Covered Professional Services under the Real Estate and Property Managers Professional Liability Coverage Part section of the Declarations.

Property management services do not include the management or implementation of renovations or construction or reconstruction projects.

22.     Pine Management has paid in full all premiums due under the Policy.

23.     Pine Management has complied with all of the Policy's terms and requirements.

–5–

docs-100232066.1

24.     No defenses to coverage apply under the Policy, or Defendants have waived all defenses to coverage under the Policy, or such defenses are the subject of an estoppel.

**II.    Pine Management Provides Defendants Notice of the Underlying Actions**

25.     On January 20, 2017, Brenda Rohlman and Lloyd Pine (as Personal Representatives of the Estate of Sydell Pine and as Trustees for the Sydell Pine 2009 Family Trust), Thomas Rohlman, and Pine Management were sued in New York Supreme Court, New York County, in an action styled, *SM&S Associates v. Rohlman, et al.*, Index No. 650356/2017 (the "Ironton Action").

26.     Shortly thereafter, Pine Management provided timely notice to Defendants of the Ironton Action.

27.     On February 6, 2017, Defendants wrote to Pine Management and confirmed, *inter alia*, that 1) it would defend Pine Management in the Ironton Action, subject to a reservation of rights, and 2) it would contact Pine Management to discuss the appointment of defense counsel in connection with the Ironton Action.

28.     In the reservation of rights letter, Defendants reserved their rights to disclaim coverage on the basis that certain acts alleged in the complaint were not in the performance of "professional services"; pointed to potentially excluded "disgorgement" damages; cited the "Intentional Acts" exclusion as a potential basis to deny coverage if there was a final adjudication; and noted the underlying claims seek both compensatory and uncovered punitive damages.

29.     On or about February 21, 2017, Defendants advised that the current rates paid to panel defense counsel was a single rate of $425/hour for lawyers and $125/hour for paralegals (although Hiscox apparently revised these rates to $475/hour for lawyers and $175/hour for paralegals based on the communication described in paragraph 33 below), and that Defendants

–6–

docs-100232066.1

agreed to Pine Management's retention of Meister Seelig & Fein LLP ("MSF") at panel counsel rates for the defense of the Ironton Action.

30.     On July 31, 2017, Harold Pine, Thomas Rohlman, and Pine Management were sued in New York Supreme Court, New York County, in an action styled, *Shapiro Family Limited Partnership, et al. v. Pine Management, et al.*, Index No. 655112/2017 (the "Manor House Action", and together with the "Ironton Action", the "Underlying Actions").

31.     Shortly thereafter, Pine Management provided Defendants notice of the Manor House Action.

32.     On August 10, 2017, Defendants confirmed they would defend Pine Management in connection with the Manor House Action.  As they did with the Ironton Action, Defendants reserved their rights to disclaim coverage on a number of bases.

33.     On or about August 15, 2017, Defendants agreed to Pine Management's retention of MSF as defense counsel in the Manor House Action, subject to the approved rates of $475/hour for attorneys and $175/hour for paralegals (Hiscox described this as the "same rate" for the Ironton Action and paid all of MSF's lawyer rates at $475/hour and paralegal rates at $175/hour).  Defendants advised that any hourly rates in excess of the approved rates would be Pine Management's responsibility.

III.    **Pine Management Retains New Counsel to Resolve the Underlying Litigations**

34.     In or around April 2018, Pine Management hired Sean E. O'Donnell, Esq. (at the time, an attorney at Akin Gump, although he moved to Herrick Feinstein around October 2018) to assist with the defense of the Underlying Actions.

35.     Pine Management engaged Mr. O'Donnell as new counsel, in part, because Pine Management and the members named in the Underlying Actions believed that buying out the Plaintiffs' interests in the two entities forming the subject of the Underlying Actions was in the

—7—

docs-100232066.1

"insureds" best interests, and ultimately benefited Hiscox as well. Accordingly, Pine Management elected to work with new counsel and shift the defense from a litigation tactic to a transactional approach. Mr. O'Donnell subsequently entered his appearance as new counsel in the Underlying Actions.

36.     Mr. O'Donnell also came highly recommended in the subject area giving rise to the Underlying Actions.

37.     On or about August 3, 2018, Mr. O'Donnell was able to negotiate an Arbitration and Settlement Agreement, which provided for the resolution of the Underlying Actions through an appraised buyout of the underlying plaintiffs' interests.

38.     While the resolution resulted in "damages" of $800,000.00 in interest owed by the "insureds", the approach adopted and resolution obtained by Pine Management and its independent counsel resulted in significant savings to Defendants, not only from years of defense costs through trial, but also from potentially having to indemnify Pine Management for a judgment.

## IV.    Defendants Breach the Policy

39.     On or about March 29, 2019, Pine Management requested that Defendants reimburse it for certain attorneys' fees and costs incurred with respect to the Underlying Actions, including those related to its independent new counsel, Sean E. O'Donnell, Esq., as well as expert witness costs. Pine Management represented that it would only seek reimbursement at Hiscox's approved rates and that it would not seek reimbursement of any overlapping fees between Mr. O'Donnell and MSF.

40.     On or about April 23, 2019, Defendants wrote Pine Management and advised that they would not reimburse the "claim expenses", contending, *inter alia*, that 1) Pine Management did not request or receive Defendants' approval prior to retaining Mr. O'Donnell or any expert

–8–

Case 1:20-cv-02491   Document 3-1   Filed 03/24/20   Page 13 of 67

witnesses and incurring the associated fees and costs, and thus, 2) they have no obligation to pay these additional amounts under the Policy.

41.      On or about July 11, 2019, Pine Management wrote Defendants and advised that Defendants were not prejudiced by Pine Management's retention of Mr. O'Donnell as new counsel at Hiscox's approved rates.  Further, Pine Management stated that, although Defendants confirmed coverage and agreed to defend, they did so under a reservation of rights to deny or limit coverage, thus creating a conflict of interest that triggered Pine Management's right to independent counsel, and in turn, permitted the selection of independent counsel and obtain reimbursement of these "claim expenses" from Defendants.

42.      On or about August 12, 2019, Defendants wrote to Pine Management and acknowledged Pine Management was entitled to independent counsel in connection with the Underlying Actions, but argued that this right did not permit Pine Management to retain independent new counsel at its own discretion and without Defendants' approval.

43.      On or about August 21, 2019, Pine Management, again, demanded that Defendants reimburse the "claim expenses".

44.      To date, despite their obligation to do so, Defendants have not paid the covered "claim expenses" incurred by Pine Management's independent new counsel or "damages", even though Defendants have acknowledged coverage and Pine Management's right to independent counsel and suffered no prejudice.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

45.      Pine Management repeats and realleges paragraphs 1 through 44 of the Complaint as if fully set forth herein.

—9—

docs-100232066.1

Case 1:20-cv-02491   Document 3-1   Filed 03/24/20   Page 14 of 67

46.     The Policy sets forth a valid and enforceable contract between Pine Management and Defendants.

47.     Pine Management has complied with all conditions to coverage, including payment of all insurance premiums due to Defendants under the Policy, as well as their duty to cooperate with Defendants throughout the pendency of the Underlying Actions.

48.     Under the terms of the Policy, Defendants have a contractual obligation to advance and reimburse Pine Management's covered "claim expenses" and "damages" incurred in connection with the Underlying Actions.

49.     Defendants have breached the terms and provisions of the Policy by failing to advance or reimburse Pine Management's "claim expenses" and "damages" in connection with the Underlying Actions.

50.     As a result of Defendants' breach, Pine Management sustained damages and is entitled to an award of damages, in an amount to be proven at trial.

**WHEREFORE**, Pine Management respectfully demands judgment against Defendants as follows:

1.      With respect to the First Cause of Action for Breach of Contract,

    a.   awarding money damages, pre-judgment and post-judgment interest;

    b.   requiring Defendants to reimburse Pine Management for all attorneys' fees and costs related to the Underlying Actions, as well as expert witness costs; and

    c.   for such other and further relief as the Court may deem just and proper.

–10–

## JURY DEMAND

Pine Management demands trial by jury on all issues so triable.

Dated: January 28, 2020                    By: _____

Dennis J. Nolan, Esq.
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, NY 10020
T: 212-278-1000

*Attorneys for Plaintiff*
*Pine Management, Inc.*

–11–

Attorney: ANDERSON KILL, P.C. **PH**: (212) 278-1000
**Address**: 1251 AVENUE OF THE AMERICAS NEW YORK, NEW YORK 10020-1182

| | |
|---|---|
| PINE MANAGEMENT, INC. | **Index Number**: 650627/2020 |
| *Plaintiff* | **Date Filed**: 01/28/2020 |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON  and CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO CERTIFICATE NO. MPL 1690585.16, ETAL., | **Client's File No.**: |
| *Defendant* | **Court Date**: |

STATE OF NEW YORK, COUNTY OF NEW YORK, SS.:
**SCHADRAC LAGUERRE**, being sworn says:

# AFFIDAVIT OF SERVICE

Deponent is not a party herein; is over the age of 18 years and resides in the State of New York.

On **2/5/2020**, at **11:15 AM** at: **520 MADISON AVENUE, 32nd FLOOR, NEW YORK, NY 10022** Deponent served the within **Notice of Electronic Filing, Summons and Complaint and Jury Trial Demanded**

On: **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON  and CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO CERTIFICATE NO. MPL 1690585.16, Attn: Head of Claims**,  therein named.

☐ **#1 INDIVIDUAL**
By delivering a true copy of each to said recipient personally; Deponent knew the person so served to be the person described in as said recipient therein.

☐ **#2 SUITABLE AGE PERSON**
By delivering thereat a true copy of each to  (Managing Agent (Attorney for Defendant)) a person of suitable age and discretion. Said premises is recipient's:[] actual place of business / employment  [] dwelling house (usual place of abode) within the state.

☐ **#3 AFFIXING TO DOOR**
By affixing a true copy of each to the door of said premises which is defendants
[] actual place of business / employment  [] dwelling house (usual place of abode) within the state. Deponent was unable with due diligence to find defendant or person of suitable age and discretion thereat having called there

☒ **#4 Corporation or Partnership or Trust or LLC**
By delivering thereat a true copy of each to Edward Taylor personally. Deponent knew said corporation/partnership/trust/LLC so served to be the corporation/partnership/trust/LLC described in said aforementioned document as said defendant and knew said individual to be Managing Agent (Attorney for Defendant) thereof.

☐ **#5 MAILING**
On , deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known [] Actual Place of Residence [X] Actual Place of Business,  and deposited the envelope in an official depository, personally or via agency, under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "personal and confidential" and did not indicate on the outside, thereof by return address or otherwise that the communication was from an attorney or concerned an action against the defendant.

☒ **#6 DESCRIPTION**
**Sex**: Male     **Color of skin**: White     **Color of hair**: Blonde     **Glasses**:
**Age**: 51-65     **Height**: 5ft 9in - 6ft 0in     **Weight**: 131-160 Lbs.     **Other Features**:

☐ **#7 MILITARY SERVICE**
I asked the person spoken to whether defendant was in active military service of the United States or the State of New York in any capacity whatever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated.

☐ **#8 WITNESS FEES**
Subpoena Fee Tendered in the amount of

☐ **#9 OTHER**

Sworn to before me on 02/06/2020

_____
**JAY BRODSKY**
Notary Public State of New York
No. 31-4683271
Qualified in New York County
Commission Expires Feb. 2, 2023

_____
SCHADRAC LAGUERRE
2026030-DCA

ABC Process Serving Bureau Inc., 225 Broadway, Suite 2950, New York, NY 10007

**Attorney:** ANDERSON KILL, P.C. **PH:** (212) 278-1000
**Address:** 1251 AVENUE OF THE AMERICAS NEW YORK, NEW YORK 10020-1182

| | |
|---|---|
| PINE MANAGEMENT, INC. | **Index Number**: 650627/2020 |
| *Plaintiff* | **Date Filed**: 01/28/2020 |
| **vs** | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO CERTIFICATE NO. MPL 1690585.16, ETAL., | **Client's File No.:** |
| *Defendant* | **Court Date:** |

STATE OF NEW YORK, COUNTY OF NEW YORK, SS.:
**SCHADRAC LAGUERRE**, being sworn says:

# AFFIDAVIT OF SERVICE

Deponent is not a party herein; is over the age of 18 years and resides in the State of New York.

On **2/5/2020**, at **11:15 AM** at: **520 MADISON AVENUE, 32nd FLOOR, NEW YORK, NY 10022** Deponent served the within **Notice of Electronic Filing, Summons and Complaint and Jury Trial Demanded**

On: **HISCOX, INC. Attn: Head of Claims**, therein named.

☐ **#1 INDIVIDUAL**
By delivering a true copy of each to said recipient personally; Deponent knew the person so served to be the person described in as said recipient therein.

☐ **#2 SUITABLE AGE PERSON**
By delivering thereat a true copy of each to (Managing Agent (Attorney for Defendant)) a person of suitable age and discretion. Said premises is recipient's:[] actual place of business / employment [] dwelling house (usual place of abode) within the state.

☐ **#3 AFFIXING TO DOOR**
By affixing a true copy of each to the door of said premises which is defendants
[] actual place of business / employment [] dwelling house (usual place of abode) within the state. Deponent was unable with due diligence to find defendant or person of suitable age and discretion thereat having called there

☒ **#4 Corporation or Partnership or Trust or LLC**
By delivering thereat a true copy of each to Edward Taylor personally. Deponent knew said corporation/partnership/trust/LLC so served to be the corporation/partnership/trust/LLC described in said aforementioned document as said defendant and knew said individual to be Managing Agent (Attorney for Defendant) thereof.

☐ **#5 MAILING**
On , deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known [] Actual Place of Residence [X] Actual Place of Business, and deposited the envelope in an official depository, personally or via agency, under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "personal and confidential" and did not indicate on the outside, thereof by return address or otherwise that the communication was from an attorney or concerned an action against the defendant.

☒ **#6 DESCRIPTION**

| Sex: Male | Color of skin: White | Color of hair: Blonde | Glasses: | |
|---|---|---|---|---|
| Age: 51-65 | Height: 5ft 9in - 6ft 0in | Weight: 131-160 Lbs. | | Other Features: |

☐ **#7 MILITARY SERVICE**
I asked the person spoken to whether defendant was in active military service of the United States or the State of New York in any capacity whatever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated.

☐ **#8 WITNESS FEES**
Subpoena Fee Tendered in the amount of

☐ **#9 OTHER**

Sworn to before me on 2/6/2020

JAY BRODSKY
Notary Public State of New York
No. 31-4683271
Qualified in New York County
Commission Expires Feb. 2, 2023

SCHADRAC LAGUERRE
2026030-DCA

ABC Process Serving Bureau Inc., 225 Broadway, Suite 2950, New York, NY 10007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PINE MANAGEMENT, INC., | Index No. 650627/2020 |
| Plaintiff, | |
| -against- | **JURY TRIAL DEMANDED** |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON and CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO CERTIFICATE NO. MPL 1690585.16, | |
| Defendant. | |

## AMENDED COMPLAINT

Plaintiff, Pine Management, Inc. ("Pine Management"), by and through its attorneys, Anderson Kill P.C., for its Amended Complaint against Defendant, Certain Underwriters at Lloyd's, London and Certain London Market Companies Subscribing to Certificate No. MPL 1690585.16 (" Defendant"), alleges and states as follows:

## NATURE OF THE ACTION

1.      This is an insurance coverage action against Defendant for breach of contract arising out of Defendant's refusal to honor its coverage obligations under the Real Estate and Property Managers Professional Liability Insurance Policy that Defendant sold to Pine Management.

2.      Pine Management brings this action to recover damages for Defendant's unreasonable refusal to pay covered "claim expenses" of at least $535,000.00 that Pine Management incurred during the course of defending two actions filed against it and other "insureds" under the Policy (defined below) in 2017, as well as covered "damages" of at least $820,000.00 in interest.

docs-100236325.1

3.      Defendant consented to Pine Management's retention of counsel to defend against the Underlying Actions (defined below) and approved hourly rates for the defense. However, Defendant did so under a reservation of rights to deny or limit coverage to Pine Management. This reservation of rights created a conflict of interest that triggered Pine Management's right to select counsel of its own choosing to direct the defense of the Underlying Actions at Defendant's approved rates.

4.      Several months into the defense of the Underlying Actions, Pine Management determined that it could best accomplish a prompt, successful and satisfactory resolution of the Underlying Actions by retaining new counsel, who adopted a transactional posture and managed to resolve the Underlying Actions via an appraised buyout of the plaintiffs' interests. New counsel achieved an expeditious resolution of the matter that not only reduced the overall attorneys' fees that Pine Management would have incurred, and which Defendant would have been obligated to reimburse, but also reduced Defendant's potential indemnification obligation.

5.      At the conclusion of the Underlying Actions, Pine Management submitted invoices for new counsel's legal fees, as well as associated expert fees, to Defendant and sought reimbursement of these "claim expenses" at Defendant's -approved rates.

6.      Despite Defendant: agreeing to provide Pine Management with a complete defense for the Underlying Actions; acknowledging Pine Management's right to hire independent counsel; saving significant sums because of Pine Management's strategy through independent counsel; and otherwise suffering no prejudice, Defendant refused, and continue to refuse, to reimburse Pine Management's "claim expenses" and "damages", which are indisputably covered under the Policy.

–2–

docs-100236325.1

## THE PARTIES

7.      Plaintiff Pine Management, Inc. is a New York corporation with its principal place of business at 78 Manhattan Avenue, New York, New York 10025-4676.

8.      Upon information and belief, Defendant Certain Underwriters at Lloyd's London and Certain London Market Companies Subscribing to Certificate No. MPL 1690585.16 are entities that are or were underwriting members of Lloyd's that subscribed to the Lloyd's Policy and reside outside of the United States.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over Defendant pursuant to CPLR § 301 or § 302, because, upon information and belief, Defendant, at all relevant times, were corporations authorized to transact business in the State of New York and/or that operated, conducted, transacted, engaged in or carried on a business or business ventures in New York; the business at issue was transacted in New York and bears a substantial nexus with this action; and because Defendant engages in substantial business within New York.

10.      The Commercial Division of this Court has jurisdiction under 22 NYCRR § 202.70 because, among other things, this is a breach of contract action involving commercial insurance coverage and the amount in controversy exceeds the monetary threshold of $500,000.

11.      Venue is proper in this Court pursuant to CPLR § 503 because Pine Management has its principal offices in New York County.

## FACTUAL BACKGROUND

### I.      The Policy

12.      Defendant sold Pine Management Real Estate and Property Managers Professional Liability Insurance Policy Number MPL 1690585.16, a true and correct copy of

–3–

docs-100236325.1

which is attached hereto as Exhibit A (the "Policy"), for the policy period of October 20, 2016 through October 20, 2017.

13.    The Policy, a claims-made and reported policy, has a $1,000,000 limit of liability per professional liability claim and in the aggregate.

14.    Pine Management, and any "partner, director, officer or board member" while in the course of their performance of "professional services" on behalf of or at the direction of Pine Management, constitute "Insureds" under the Policy.

15.    By the Policy, Defendant agreed to pay "**damages and claim expenses**[1] in excess of the **retention** for covered **claims** against" an Insured "alleging a negligent act, error or omission in **your professional services** performed for any property, whether or not owned by **you**…" The Policy, Section I, "What is covered".

16.    The Policy defines "**damages**" to include "the following amounts in excess of the **retention**:

> 1.  a monetary judgment or monetary award that you are legally obligated to pay (including pre- or post-judgment interest and awards of claimant's attorney fees); or
>
> 2.  a monetary settlement negotiated by us with your consent."

17.    The Policy defines "**Claim expenses**", in pertinent part, as "the following sums incurred in excess of the retention and with our prior written consent:

> 1.  all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and experts) incurred in the investigation, defense, or appeal of a claim;"

18.    The applicable "**retention**" under the Policy is $5,000.00.

---

[1] The terms herein that are bold faced are defined terms in the Policy.

–4–

docs-100236325.1

19.     The Policy defines "**claim**" as "any written assertion of liability or any written demand for financial compensation or nonmonetary relief."

20.     The Policy defines "**professional services**" as "**real estate services**" and/or "**property management services**." In turn, "**real estate services**" means: "real estate agent, broker, and/or leasing services, including any services as a notary public performed in conjunction with such real estate agent, broker, and/or leasing services, and any other services identified as Covered Professional Services under the Real Estate and Property Managers Professional Liability Coverage Part section of the Declarations." "**Professional management services**" means:

> 1. development and implementation of management plans and budgets;
> 2. oversight of physical maintenance of property;
> 3. solicitation, evaluation, and securing of tenants, management of tenant relations, collection of rent, and processing evictions;
> 4. development, implementation, and management of loss control and risk management plans for real property;
> 5. development, procurement, implementation, and management of contracts and subcontracts necessary to the daily functioning of real property;
> 6. personnel administration and record keeping;
> 7. leasing services in connection with the property you are managing; and/or
> 8. any other services identified as Covered Professional Services under the Real Estate and Property Managers Professional Liability Coverage Part section of the Declarations.

> Property management services do not include the management or implementation of renovations or construction or reconstruction projects.

21.     Pine Management has paid in full all premiums due under the Policy.

22.     Pine Management has complied with all of the Policy's terms and requirements.

23.     No defenses to coverage apply under the Policy, or Defendant has waived all defenses to coverage under the Policy, or such defenses are the subject of an estoppel.

–5–

## II.    **Pine Management Provides Defendant Notice of the Underlying Actions**

24.    On January 20, 2017, Brenda Rohlman and Lloyd Pine (as Personal Representatives of the Estate of Sydell Pine and as Trustees for the Sydell Pine 2009 Family Trust), Thomas Rohlman, and Pine Management were sued in New York Supreme Court, New York County, in an action styled, *SM&S Associates v. Rohlman, et al.*, Index No. 650356/2017 (the "Ironton Action").

25.    Shortly thereafter, Pine Management provided timely notice to Defendant of the Ironton Action through Defendant's duly-authorized administrator, Hiscox, Inc..

26.    On February 6, 2017, Defendant, through its duly-authorized Senior Claims Counsel at Hiscox USA,  wrote to Pine Management and confirmed, *inter alia*, that 1) it would defend Pine Management in the Ironton Action, subject to a reservation of rights, and 2) it would contact Pine Management to discuss the appointment of defense counsel in connection with the Ironton Action.

27.    In the reservation of rights letter, Defendant reserved its rights to disclaim coverage on the basis that certain acts alleged in the complaint were not in the performance of "professional services"; pointed to potentially excluded "disgorgement" damages; cited the "Intentional Acts" exclusion as a potential basis to deny coverage if there was a final adjudication; and noted the underlying claims seek both compensatory and uncovered punitive damages.

28.    On or about February 21, 2017, Defendant advised that the current rates paid to panel defense counsel was a single rate of $425/hour for lawyers and $125/hour for paralegals (although Defendant apparently revised these rates to $475/hour for lawyers and $175/hour for paralegals based on the communication described in paragraph 33 below), and that Defendant

—6—

agreed to Pine Management's retention of Meister Seelig & Fein LLP ("MSF") at panel counsel rates for the defense of the Ironton Action.

29.     On July 31, 2017, Harold Pine, Thomas Rohlman, and Pine Management were sued in New York Supreme Court, New York County, in an action styled, *Shapiro Family Limited Partnership, et al. v. Pine Management, et al.*, Index No. 655112/2017 (the "Manor House Action", and together with the "Ironton Action", the "Underlying Actions").

30.     Shortly thereafter, Pine Management provided Defendant notice of the Manor House Action through Defendant's duly-authorized administrator.

31.     On August 10, 2017, Defendant, through its duly-authorized administrator, confirmed it would defend Pine Management in connection with the Manor House Action.  As it did with the Ironton Action, Defendant reserved its rights to disclaim coverage on a number of bases.

32.     On or about August 15, 2017, Defendant, through its duly-authorized administrator, agreed to Pine Management's retention of MSF as defense counsel in the Manor House Action, subject to the approved rates of $475/hour for attorneys and $175/hour for paralegals (Defendant described this as the "same rate" for the Ironton Action and paid all of MSF's lawyer rates at $475/hour and paralegal rates at $175/hour).  Defendant advised that any hourly rates in excess of the approved rates would be Pine Management's responsibility.

III.    **Pine Management Retains New Counsel to Resolve the Underlying Litigations**

33.     In or around April 2018, Pine Management hired Sean E. O'Donnell, Esq. (at the time, an attorney at Akin Gump, although he moved to Herrick Feinstein around October 2018) to assist with the defense of the Underlying Actions.

34.     Pine Management engaged Mr. O'Donnell as new counsel, in part, because Pine Management and the members named in the Underlying Actions believed that buying out the

—7—

docs-100236325.1

Plaintiffs' interests in the two entities forming the subject of the Underlying Actions was in the "insureds" best interests, and ultimately benefited Defendant as well. Accordingly, Pine Management elected to work with new counsel and shift the defense from a litigation tactic to a transactional approach. Mr. O'Donnell subsequently entered his appearance as new counsel in the Underlying Actions.

35.     Mr. O'Donnell also came highly recommended in the subject area giving rise to the Underlying Actions.

36.     On or about August 3, 2018, Mr. O'Donnell was able to negotiate an Arbitration and Settlement Agreement, which provided for the resolution of the Underlying Actions through an appraised buyout of the underlying plaintiffs' interests.

37.     While the resolution resulted in "damages" of $800,000.00 in interest owed by the "insureds", the approach adopted and resolution obtained by Pine Management and its independent counsel resulted in significant savings to Defendant, not only from years of defense costs through trial, but also from potentially having to indemnify Pine Management for a judgment.

## IV.    Defendant Breach the Policy

38.     On or about March 29, 2019, Pine Management requested that Defendant reimburse it for certain attorneys' fees and costs incurred with respect to the Underlying Actions, including those related to its independent new counsel, Sean E. O'Donnell, Esq., as well as expert witness costs. Pine Management represented that it would only seek reimbursement at Defendant's approved rates and that it would not seek reimbursement of any overlapping fees between Mr. O'Donnell and MSF.

39.     On or about April 23, 2019, Defendant wrote Pine Management and advised that it would not reimburse the "claim expenses", contending, *inter alia*, that 1) Pine Management

–8–

docs-100236325.1

did not request or receive Defendant's approval prior to retaining Mr. O'Donnell or any expert witnesses and incurring the associated fees and costs, and thus, 2) it has no obligation to pay these additional amounts under the Policy.

40.     On or about July 11, 2019, Pine Management wrote Defendant and advised that Defendant was not prejudiced by Pine Management's retention of Mr. O'Donnell as new counsel at Defendant's approved rates.  Further, Pine Management stated that, although Defendant confirmed coverage and agreed to defend, it did so under a reservation of rights to deny or limit coverage, thus creating a conflict of interest that triggered Pine Management's right to independent counsel, and in turn, permitted the selection of independent counsel and obtain reimbursement of these "claim expenses" from Defendant.

41.     On or about August 12, 2019, Defendant wrote to Pine Management and acknowledged Pine Management was entitled to independent counsel in connection with the Underlying Actions, but argued that this right did not permit Pine Management to retain independent new counsel at its own discretion and without Defendant's approval.

42.     On or about August 21, 2019, Pine Management, again, demanded that Defendant reimburse the "claim expenses".

43.     To date, despite its obligation to do so, Defendant has not paid the covered "claim expenses" incurred by Pine Management's independent new counsel or "damages", even though Defendant has acknowledged coverage and Pine Management's right to independent counsel and suffered no prejudice.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

44.     Pine Management repeats and realleges paragraphs 1 through 44 of the Complaint as if fully set forth herein.

–9–

docs-100236325.1

45.     The Policy sets forth a valid and enforceable contract between Pine Management and Defendant.

46.     Pine Management has complied with all conditions to coverage, including payment of all insurance premiums due to Defendant under the Policy, as well as their duty to cooperate with Defendant throughout the pendency of the Underlying Actions.

47.     Under the terms of the Policy, Defendant has a contractual obligation to advance and reimburse Pine Management's covered "claim expenses" and "damages" incurred in connection with the Underlying Actions.

48.     Defendant has breached the terms and provisions of the Policy by failing to advance or reimburse Pine Management's "claim expenses" and "damages" in connection with the Underlying Actions.

49.     As a result of Defendant's breach, Pine Management sustained damages and is entitled to an award of damages, in an amount to be proven at trial.

**WHEREFORE**, Pine Management respectfully demands judgment against Defendant as follows:

1.     With respect to the First Cause of Action for Breach of Contract,

    a.   awarding money damages, pre-judgment and post-judgment interest;

    b.   requiring Defendant to reimburse Pine Management for all attorneys' fees and costs related to the Underlying Actions, as well as expert witness costs; and

    c.   for such other and further relief as the Court may deem just and proper.

–10–

docs-100236325.1

INDEX NO. 650627/2020

Case 1:20-cv-02491   Document 3-1   Filed 03/24/20   Page 28 of 67

RECEIVED NYSCEF: 02/24/2020

## JURY DEMAND

Pine Management demands trial by jury on all issues so triable.

Dated:  February 24, 2020      By: _____

                                   Dennis J. Nolan, Esq.
                                   ANDERSON KILL, P.C.
                                   1251 Avenue of the Americas
                                   New York, NY 10020
                                   T:  212-278-1000

                                   *Attorneys for Plaintiff*
                                   *Pine Management, Inc.*

–11–

docs-100236325.1

# EXHIBIT A
## (Policy)

# HISCOX PRO™    Insurance for Real Estate Professionals

## A seamless integrated insurance solution for professionals.

Please read this wording, together with any **endorsements** and the declarations, very carefully. If anything is not correct, please notify **us** immediately. Please note the full extent of your and our rights and duties.

## Our promise to you

In return for the premium **you** have paid, **we** agree to insure **you** in accordance with the terms and conditions of the **policy**.

## Your policy documents

**Declarations Page**
This contains a summary of policy information including the limits of liability and retention amounts you have selected.

**General Terms and Conditions**
This contains terms and conditions which apply to the policy in its entirety, subject to any policy endorsements.

**Coverage Parts**
This contains terms and conditions which apply only to the coverage part in which they appear.

**Endorsements**
These documents modify the declarations page, general terms and conditions and/or coverage parts.

**Notices**
These documents provide information that may affect your coverage as required by your state.

## Complimentary risk management services

As a complimentary service to this policy, we are pleased to provide a free confidential risk management and loss prevention service, consisting of an initial consultation and up to 1-hour of legal services to assist you in better understanding and minimizing risks that commonly lead to the types of claims covered under this policy. If you have a question about minimizing these types of liability risks in your business, please email your question to us at riskmanagement@hiscox.com, along with your policy number. A Hiscox representative will get back to you within 1 (one) business day with a referral to a nationally recognized law firm with a practice specifically focused on your industry.

Please note that any inquiries made to this service will not constitute a notice of claim or potential claim under your policy. For all claim or potential claim matters, please follow the notification provisions in this policy. Please also note that this service is not intended to respond to questions regarding your insurance policy or coverage. For all such inquiries, please contact your agent or broker.

## Reporting a claim

Please inform us immediately if you have a claim or loss to report and refer to the Coverage Module claim reporting provisions for further details.

Email: hiscoxclaims@hiscox.com

---

**Hiscox Inc.**
520 Madison Avenue 32nd Floor
New York, NY 10022

**T** (646) 452-2353
**F** (212) 922-9652
**E** hiscox.usa@hiscox.com
www.hiscoxbroker.com



Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

### Endorsement 1

NAMED INSURED: Pine Management, Inc.

**E6212.1 New York Punitive Damages Amendatory Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

The definition of "**Damages**" is amended to the extent necessary to provide the following:

**Damages** includes punitive or exemplary damages unless such damages are uninsurable under the law pursuant to which this policy is construed.

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 1 | Processed Date: | 10/20/2016 |
| Hiscox Inc. | | | |

Authorized Representative
Carl Bach

WCL E6212 NY (01/16)



**HISCOX PRO**™

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

<u>**Endorsement 2**</u>

NAMED INSURED: Pine Management, Inc.

<u>**E6015.4 Lloyd's Syndicate Endorsement**</u>

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

The Underwriters referred to in the Declarations are identified as follows:

Proportion Percent: 100%
Syndicate: 3624
Contract #: B1234HisInc2016
Registration Date: December 22, 2005

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 2 | Processed Date: | 10/20/2016 |

Hiscox Inc.

Authorized Representative
Carl Bach



HISCOX PRO™

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

<u>**Endorsement 3**</u>

NAMED INSURED: Pine Management, Inc.

**<u>E6016.1 Service of Suit Endorsement</u>**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

In the event **we** fail to pay any amount claimed to be due under this policy, **we** agree to submit to the jurisdiction of a Court of competent jurisdiction within the United States at **your** request. Nothing in this clause is intended to constitute a waiver of **our** right to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States.

Service of process in any suit against **us** may be made on:

Hiscox Inc.
520 Madison Ave. - 32nd Floor
New York, NY 10022
Attn: Head of Claims

In any suit instituted against **us**, **we** agree to abide by the final decision of such Court, or in the event of an appeal, of any Appellate Court.

The above named are authorized to accept service of process on **our** behalf in any such suit and will enter a general appearance on **our** behalf in the event such suit is instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, **we** designate the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, as **our** agent for service of process in any action, suit, or proceeding instituted by **you** or on **your** behalf, or any other beneficiary under this policy, and designate the above named as the person to whom such agent is authorized to mail process.

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 3 | Processed Date: | 10/20/2016 |

Hiscox Inc.

Authorized Representative
Carl Bach

WCL E6016 CW (05/13)



Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

### Endorsement 4

NAMED INSURED: Pine Management, Inc.

### E6017.2 Nuclear Incident Exclusion Clause-Liability-Direct (Broad) Endorsement

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

**We** will have no obligation to pay any sums under this policy, including any **damages**, **claim expenses**, or other **covered amounts**, for any **claim**, **breach**, **event**, or **occurrence**:

A.   Under any liability coverage, for injury, sickness, disease, death, or destruction:

   1. for which **you** are also insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for exhaustion of its limit of liability; or

   2. resulting from the **hazardous properties** of **nuclear material** and with respect to which:

      a.   any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, as amended; or

      b.   **you** are, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.   Under any Medical Payments coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, for expenses incurred with respect to bodily injury, sickness, disease, or death resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C.   Under any liability coverage, for injury, sickness, disease, death, or destruction resulting from the **hazardous properties** of **nuclear material**, if:

   1. the **nuclear material** is at any **nuclear facility** owned or operated by **you** or on **your** behalf, or has been discharged or dispersed from such a facility;

   2. the **nuclear material** is contained in spent fuel or **waste** which is or was at any time possessed, handled, used, processed, stored, transported, or disposed of by **you** or on **your** behalf; or

   3. the injury, sickness, disease, death, or destruction arises out of the furnishing by **you** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to injury to or destruction of property at such **nuclear facility**.

As used in this endorsement:

**Hazardous properties** includes radioactive, toxic, or explosive properties;

**Nuclear material** means **source material**, **special nuclear material**, or **byproduct material**;

WCL E6017 CW (07/14)



Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 4**

NAMED INSURED: Pine Management, Inc.

**Source material**, **special nuclear material**, and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954, as amended;

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

**Waste** means any waste material:

1.  containing **byproduct material**; and

2.  resulting from the operation by any person or organization of any **nuclear facility** included in paragraph 1 or 2 of the definition of **nuclear facility**;

**Nuclear facility** means:

1.  any any **nuclear reactor**;

2.  any any equipment or device designed or used for:

    a.   separating the isotopes of uranium or plutonium;

    b.   processing or utilizing spent fuel; or

    c.   handling, processing, or packaging **waste**;

3.  any equipment or device used for the processing, fabricating, or alloying of **special nuclear material**, if at any time the total amount of such material in **your** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

4.  any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **waste**.

**Nuclear facility** includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

With respect to injury to or destruction of property, "injury" or "destruction" includes all forms of radioactive contamination of property.

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 4 | Processed Date: | 10/20/2016 |
| Hiscox Inc. | | | |

INDEX NO. 650627/2020

Case 1:20-cv-02491   Document 3-1   Filed 03/24/20   Page 36 of 67

RECEIVED NYSCEF: 02/24/2020

# HISCOX PRO™

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 4**

NAMED INSURED: Pine Management, Inc.

Authorized Representative
Carl Bach



HISCOX PRO™

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

## Endorsement 5

NAMED INSURED: Pine Management, Inc.

### E6018.2 Applicable Law Endorsement

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

This policy is subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Endorsement to this policy.

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 5 | Processed Date: | 10/20/2016 |

Hiscox Inc.

Authorized Representative
Carl Bach



**HISCOX PRO**™

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

<u>**Endorsement 6**</u>

NAMED INSURED: Pine Management, Inc.

<u>**E6020.2 War and Civil War Exclusion Endorsement**</u>

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Terms and Conditions are amended as follows:

This policy does not apply to and **we** will have no obligation pay any sums under this policy, including any **damages**, **claim expenses**, or other **covered amounts**, for any **claim**, **breach**, **event**, or **occurrence** directly or indirectly occasioned by, happening through, or in consequence of:

1.   war, invasion, acts of foreign enemies, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection, military, or usurped power; or

2.   confiscation, nationalization, requisition, destruction of, or damage to property by or under the order of any government, public, or local authority.

However, this exclusion will not apply to coverage under the General Liability Coverage Part (if purchased) for damage by fire to premises while rented to **you** or temporarily occupied by **you** with the owner's permission. Any payments **we** make for **property damage** to such premises will be subject to the Damage to Premises Limit.

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 6 | Processed Date: | 10/20/2016 |
| Hiscox Inc. | | | |

Authorized Representative
Carl Bach



**HISCOX PRO**™

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

## Endorsement 7

NAMED INSURED: Pine Management, Inc.

### E6161.2 Add Open House Claim Sublimit Endorsement

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Declarations are amended as follows:

The following sublimit is added under the Real Estate Professional Liability Claims-Made and Reported Coverage Part:

Open House Claim:              $ 50,000 Aggregate                    Shared Limit with PL

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 7 | Processed Date: | 10/20/2016 |

Hiscox Inc.

Authorized Representative
Carl Bach

**HISCOX PRO**™

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

<u>**Endorsement 8**</u>

NAMED INSURED: Pine Management, Inc.

<u>**E6168.4 Construction Management Endorsement**</u>

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Real Estate and Property Managers Professional Liability Coverage Part is amended as follows:

I.    In Section VI. Exclusions – What is not covered, the "Construction management" exclusion is deleted in its entirety.

II.   The following exclusions are added to the end of Section VI. Exclusions – What is not covered:

| | | |
|---|---|---|
| Architectural, engineering, or general contractor services | CM-1. | based upon or arising out of **your** performance of or failure to perform services as an architect, engineer, or general contractor. |
| Construction services | CM-2. | based upon or arising out of **your** performance of or failure to perform any **construction** or **construction**-related services of any kind, including any management, supervision, observation, or monitoring services on projects where **you** are also performing any **construction**. |
| Real estate development | CM-3. | based upon or arising out of **your** performance of or failure to perform **real estate development services**. |
| Premature payments | CM-4. | based upon or arising out of **your** making of any payment: |

      a.    without prior receipt of an architect's certificate, where such certificate is required as a condition of payment; or

      b.    without prior receipt of appropriate waivers or releases of lien from contractors or subcontractors.

| | | |
|---|---|---|
| Faulty workmanship of contractors/ subcontractors | CM-5. | based upon or arising out of faulty workmanship, breach of contract, or defective materials provided by or on behalf of any contractors or subcontractors. |
| Exceeding cost estimates | CM-6. | based upon or arising out of any estimates of probable construction costs, including but not limited to any cost estimates being exceeded. |
| At-risk construction management | CM-7. | based upon or arising out of any at-risk construction management services. |

III.  In Section VII. Definitions, the definition of "**Property management services**" is deleted in its entirety and replaced with the following:

**Property management services**    means:

1.    development and implementation of management plans and budgets;

2.    oversight of physical maintenance of property;

3.    solicitation, evaluation, and securing of tenants, management of tenant relations, collection of rent, and processing evictions;

4.    development, implementation, and management of loss control and risk management plans for real property;

5.    development, procurement, implementation, and management of contracts and subcontracts necessary to the daily functioning of real property;

WCLMPL E6168 CW (03/16)



HISCOX PRO™

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

## Endorsement 8

NAMED INSURED: Pine Management, Inc.

      6.     personnel administration and record keeping;

      7.     leasing services in connection with the property **you** are managing;

      8.     construction management; and/or

      9.     any other services identified as Covered Professional Services in the Declarations.

IV.    The following definitions are added to the end of Section VII. Definitions:

**Construction**        means assembly, erection, excavation, fabrication, installation, demolition, or other similar or related work or services on any building, structure, or facility, including on any element or component of such.

**Real estate development services**    means the professional services customarily performed by a real estate developer, which, for purposes of this policy, means services performed in connection with the improvement of real property by the construction of buildings or other structures on such real property **you** acquire, whether alone or as part of a partnership, joint venture, syndication, or other arrangement, including the preparation, transmittal, and awarding of design and construction bid packages, and the identification and obtaining of applicable permits, variances, consents, easements, and others rights.

**Real estate development services** also include real estate agent, title agent, notary public, property manager, or general contractor services, if performed as part of the services performed as a real estate developer for the same improvement of real property.

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 8 | Processed Date: | 10/20/2016 |

Hiscox Inc.

Authorized Representative
Carl Bach



HISCOX PRO™    Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 9**

NAMED INSURED: Pine Management, Inc.

**E6166.2 Insured vs. Insured Inverse Percentage Carveback Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Real Estate and Property Managers Professional Liability Coverage Part is amended as follows:

In Section VI. Exclusions – What is not covered, the "Insured vs. insured" exclusion is deleted in its entirety and replaced with the following:

brought by or on behalf of one **insured** or **affiliate** against another **insured** or **affiliate**; however, this exclusion will not apply to a **claim** brought by an entity in which an **insured** maintains less than 50% ownership interest, in which case **we** will pay a pro rata amount of **covered amounts** equal to the percentage of interest in the entity that is not owned by the **insured**.

| | | | |
|---|---|---|---|
| Endorsement effective: | 10/20/2016 | Certificate No.: | MPL1690585.16 |
| Endorsement No: | 9 | Processed Date: | 10/20/2016 |

Hiscox Inc.

Authorized Representative
Carl Bach



**Effective with UNDERWRITERS AT LLOYD'S, LONDON**

Administered by Hiscox Inc.

520 Madison Avenue 32nd Floor, New York, NY 10022

(646) 452-2353

## Insurance for Real Estate Professionals

## DECLARATIONS

THE INSURER NAMED HEREIN IS NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER, NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE DEPARTMENT OF FINANCIAL SERVICES PERTAINING TO POLICY FORMS.

| | | |
|---|---|---|
| Broker No.: | US 0000053 | INSUREtrust.com LLC |
| Certificate No.: | MPL1690585.16 | 5185 Peachtree Parkway Suite 230 |
| Renewal of: | MPL1690585.16 | Norcross, GA 30092 |
| | | Producer: Steven Harold Haase/insuretrust/P.O. Box 920398/ Norcross, GA 30010-0398 |

**1. Named Insured:**
**Address:**
Pine Management, Inc.
78 Manhattan Ave
New York, NY 10025-4676

**2. Policy Period:**
**Inception Date:** 10/20/2016          **Expiration Date:** 10/20/2017
Inception date shown shall be at 12:01 A.M. (Standard Time) to Expiration date shown above at 12:01 A.M. (Standard Time) at the address of the Named Insured.

**3. General terms and conditions wording:**
WCL P0001 CW (09/14)
The General terms and conditions apply to this policy in conjunction with the specific wording detailed in each section below.

**4. Endorsements:**
E6212.1 - New York Punitive Damages Amendatory Endorsement, E6015.4 - Lloyd's Syndicate, E6016.1 - Service of Suit, E6017.2 - Nuclear Incident Exclusion Clause-Liability-Direct (Broad) Endorsement, E6018.2 - Applicable Law Endorsement, and E6020.2 - War and Civil War Exclusion Endorsement

**5. Optional Extension Period:**
12/24/36 months at 75/150/225 percent of the annual premium, for eligible coverage parts.

**6. Notification of claims to:**
Hiscox Claims
520 Madison Avenue, 32nd floor
New York, NY 10022
Fax: 212-922-9652
Email: HiscoxClaims@Hiscox.com

**Additional Notification requirements:**
NONE

Surplus Lines Tax $268.92 Stamping Fee $13.45
Filing Fee-ITDC $150.00

**7. Policy Premium:** $7,395          **Administration Fee:** $75          **State Surcharge:** N/A

## Real Estate Professionals Liability Claims-Made and Reported Coverage Part: WCLMPL P0004 CW (11-14)

WCL D0001 CW (07/14)

**NEW YORK**
THE INSURER(S) NAMED HEREIN IS (ARE) NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER(S), NOT PROTECTED BY THE NEW YORK STATE SECURITY FUNDS. THE POLICY MAY NOT BE SUBJECT TO ALL THE REGULATIONS OF THE INSURANCE DEPARTMENT PERTAINING TO POLICY FORMS.

Page 1 of 3

HPSDECSLREN31



**Effective with UNDERWRITERS AT LLOYD'S, LONDON**

Administered by Hiscox Inc.
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

## Insurance for Real Estate Professionals

## DECLARATIONS

| | |
|---|---|
| Covered Professional Services: | Solely as defined in the Real Estate and Property Managers Professional Liability Coverage Part. |
| Professional Liability (PL): | $ 1,000,000 Each Claim / $ 1,000,000 Aggregate |
| Defense of Licensing Proceedings: | $ 10,000 Aggregate Limit (Separate Limit) |
| Subpoena Assistance: | $ 10,000 Aggregate Limit (Separate Limit) |
| Failure to disclose pollutants: | $ 500,000 Aggregate Limit (Shared Limit with PL) |
| Third Party Discrimination/Fair Housing Act violations: | $ 1,000,000 Aggregate Limit (Shared Limit with PL) |
| Bodily Injury/Property Damage: | $ 50,000 Aggregate Limit (Shared Limit with PL) |
| Retroactive Date: | 03-01-2016 |
| Retention: | $ 5,000 |
| PL Premium: | $ 7,395 |
| Endorsements: | E6161.2 - Add Open House Claim Sublimit Endorsement, E6168.4 - Construction Management Endorsement, and E6166.2 - Insured vs. Insured Inverse Percentage Carveback Endorsement |

In accordance with the authorization granted to Hiscox Inc. under Contract No. B1234HisInc2016 by certain Underwriters at Lloyd's, London, whose names and the proportions underwritten by them can be ascertained by reference to the said Contract, which bears the Seal of Lloyd's Policy Signing Office and is on file at the office of the said Agency and in consideration of the premium specified herein, the said Underwriters do hereby bind themselves, each for their own part and not one for another, their heirs, executors and administrators, to insure as follows in accordance with the terms and conditions contained or endorsed hereon.

The Certificate terms and conditions contained herein or endorsed hereon and such other provisions, agreements or conditions as may be endorsed hereon or added hereto are hereby incorporated in this Certificate. No representative of the Underwriters shall have the power to waive or be deemed to have waived any provision or condition of this Certificate unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this Certificate exist or be claimed by the Insured(s) unless so written or attached.

IN WITNESS WHEREOF this Certificate has been signed at New York, New York



**Effective with UNDERWRITERS AT LLOYD'S, LONDON**

Administered by Hiscox Inc.

520 Madison Avenue 32nd Floor, New York, NY 10022

(646) 452-2353

## Insurance for Real Estate Professionals

## DECLARATIONS

Authorized Representative

Carl Bach

October 20, 2016

Hiscox Inc.



## HISCOX

## ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons. OFAC has also identified Sanctioned Countries. A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries. Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person. Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional. You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.



## CONFORMITY NOTICE

(This does not amend, extend, or alter the coverages or any other provisions contained in your policy)

Whenever the symbol "$" is used in this policy, it shall mean United States Dollars (USD).

 HISCOX PRO™       **General Terms and Conditions**

---

### I. Our promise to you

In consideration of the premium charged, and in reliance on the statements made and information provided to **us**, **we** will pay **covered amounts** as defined in this policy, provided **you** properly notify **us** of **claims**, **breaches**, **events**, or **occurrences**, and meet **your** obligations to **us** in accordance with the terms of this policy.

---

### II. Limits of liability

Regardless of the number of Coverage Parts **you** have purchased, the maximum **we** will pay for all **covered amounts** will be as follows:

**A. Coverage part limit**

Each Coverage Part purchased will be subject to a **coverage part limit** (if one is stated in the Declarations), which is the maximum amount **we** will pay for all **covered amounts** under that Coverage Part, other than coverage enhancements or other items **we** have expressly agreed to pay in addition to the limit. The **coverage part limit** will be in excess of any applicable **retention**.

**B. Each claim limit**

The Each Claim Limit identified in the Declarations is the maximum amount **we** will pay for all **covered amounts** for each covered **claim**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **claim** to which the sublimit applies. The Each Claim Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**.

**C. Each breach limit**

The Each Breach Limit identified in the Declarations (if **you** have purchased a relevant Coverage Part) is the maximum amount **we** will pay for all **covered amounts** for each covered **breach**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **breach** or costs to which the sublimit applies. The Each Breach Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**.

**D. Each occurrence limit**

The Each Occurrence Limit identified in the Declarations (if **you** have purchased a relevant Coverage Part) is the maximum amount **we** will pay for all **covered amounts** for each covered **occurrence**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **occurrence** to which the sublimit applies. The Each Occurrence Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**.

**E. General liability coverage part limits**

If **you** have purchased a General Liability Coverage Part, additional rules for applying limits are contained in Section IV. Limits of liability, of that Coverage Part.

**F. Related claims**

All **related claims**, regardless of when made, will be treated as one **claim**, and all subsequent **related claims** will be deemed to have been made against **you** on the date the first such **claim** was made. If, by operation of this provision, the **claim** is deemed to have been made during any period when **we** insured **you**, it will be subject to only one **retention** and one Each Claim Limit regardless of the number of claimants, **insureds**, or **claims** involved.

---

### III. Your obligations to us

**A. Named insured responsibilities**

It will be the responsibility of the **named insured** (or, if there is more than one **named insured**, the first one listed on the Declarations) to act on behalf of all **insureds** with respect to the following:

1. timely giving and receiving notice of cancellation or non-renewal;

2. timely payment of premium;

3. receipt of return premiums;

4. timely acceptance of changes to this policy; and

5. timely payment of **retentions**.

---



## HISCOX PRO™        General Terms and Conditions

B. Your duty to cooperate

**You** must cooperate with **us** in the defense, investigation, and settlement of any **claim**, **potential claim**, **breach**, **event**, **occurrence**, or other matter notified to **us**, including but not limited to:

1. notifying **us** immediately if **you** receive any settlement demands or offers, and sending **us** copies of any demands, notices, summonses, or legal papers;

2. submitting to examination and interrogation under oath by **our** representative and giving **us** a signed statement of **your** answers;

3. attending hearings, depositions, and trials as **we** request;

4. assisting in securing and giving evidence and obtaining the attendance of witnesses;

5. providing written statements to **our** representative and meeting with such representative for the purpose of investigation and/or defense;

6. providing all documents and information **we** may reasonably request, including authorizing **us** to obtain records; and

7. pursuing **your** right of recovery from others.

C. Your obligation not to incur any expense or admit liability

**You** must not make any payment, incur any expense, admit any liability, or assume any obligation without **our** prior consent. If **you** do so, it will be at **your** own cost and expense.

D. Your representations

**You** warrant that all representations made and all materials submitted by **you** or on **your** behalf in connection with the **application** for this policy are true, accurate, and not misleading, and agree they were relied on by **us** and were material to **our** decision to issue this policy to **you**. If **we** learn any of the representations or materials were untrue, inaccurate, or misleading in any material respect, **we** are entitled to treat this policy as if it had never existed.

## IV. Optional extension period

1. If **we** or the **named insured** cancel or non-renew this policy, then the **named insured** will have the right to purchase an optional extension period for the duration and at the percentage of the expiring premium stated in Item 5 of the Declarations. The optional extension period, if purchased, will start on the effective date of cancellation or non-renewal. However, the right to purchase an optional extension period will not apply if:

   a. this policy is canceled by **us** for nonpayment of premium; or

   b. the total premium for this policy has not been fully paid.

2. The optional extension period will apply only to **claims** that:

   a. are first made against **you** and reported to **us** during the optional extension period; and

   b. arise from **your professional services** performed, or a **breach**, offense, or **occurrence** that takes place, on or after the **retroactive date** but prior to the effective date of cancellation or non-renewal of this policy.

3. The additional premium will be fully earned at the inception of the optional extension period.

4. Notice of election and full payment of the additional premium for the optional extension period must be received by **us** within 30 days after the effective date of cancellation or non-renewal, otherwise any right to purchase the optional extension period will lapse.

The limits of liability applicable during any purchased optional extension period will be the remaining available **coverage part limit**. There will be no separate or additional limit of liability available for any purchased optional extension period.

The right to purchase an optional extension period will apply only to Coverage Parts **you** have purchased that include coverage written on a claims-made or loss occurring and discovered basis, and not to any Coverage Parts written on an occurrence basis.



## General Terms and Conditions

---

## V. Other provisions affecting coverage

| | | | |
|---|---|---|---|
| A. | Alteration and assignment | | No change in, modification of, or assignment of interest under this policy will be effective unless made by written endorsement to this policy signed by **our** authorized representative. |

**B. Bankruptcy or insolvency** — **Your** bankruptcy or insolvency will not relieve **us** of any of **our** obligations under this policy.

**C. Cancellation**

1. This policy may be canceled by the **named insured** by giving written notice, which must include the date the cancellation will be effective, to **us** at the address stated in the Declarations.

2. This policy may be canceled by **us** by mailing to the **named insured** by registered, certified, or other first class-mail, at the **named insured's** address stated in Item 1 of the Declarations, written notice which must include the date the cancellation will be effective. The effective date of the cancellation will be no less than 60 days after the date of the notice of cancellation, or ten days if the cancellation is due to nonpayment of premium.

3. The mailing of the notice will be sufficient proof of notice, and this policy will terminate at the date and hour specified in the notice.

4. If this policy is canceled by the **named insured**, **we** will retain the customary short rate proportion of the premium.

5. If this policy is canceled by **us**, **we** will return a pro rata proportion of the premium.

6. Payment or tender of any unearned premium by **us** will not be a condition precedent to the cancellation, but such payment will be made as soon as possible.

**D. Change in control**

If, during the **policy period**, the **named insured** consolidates with, merges into, or sells all or substantially all of its assets to any other person or entity, or any other person or entity acquires ownership or control of the **named insured**, then the **named insured** will provide **us** written notice no later than 30 days after the effective date of such change in control, together with any other information **we** may require.

**We** will not cancel this policy solely because of a change in control, but unless **you** and **we** agree in writing otherwise, after the effective date of any change in control, this policy will cover only **claims** arising from **professional services** performed, or **breaches**, offenses, or **occurrences** that took place, prior to the change in control.

**E. Coverage territory**

This policy will apply to **your professional services** performed, and **breaches**, offenses, **events**, or **occurrences** that take place, anywhere in the world, provided that any action, arbitration, or other proceeding (if **you** have purchased a relevant Coverage Part) is brought within the United States, its territories or possessions, or Canada.

**F. Estates, heirs, legal representatives, spouses, and domestic partners**

In the event of an **employee's** death or disability, this policy will also apply to **claims** brought against the **employee's**:

1. heirs, executors, administrators, trustees in bankruptcy, assignees, and legal representatives; or

2. lawful spouse or lawful domestic partner;

but only:

1. for a covered **claim** arising from the scope of the **employee's** work for **you**; or

2. in connection with their ownership interest in property which the claimant seeks as recovery in a covered **claim** arising from the scope of the **employee's** work for **you**.

**G. False or fraudulent claims**

If any **insured** commits fraud in connection with any **claim**, **potential claim**, **breach**, offense, **event**, or **occurrence**, whether regarding the amount or otherwise, this insurance will become void as to that **insured** from the date the fraud is committed.



## General Terms and Conditions

| | | |
|---|---|---|
| H. | Other insurance | Any payment due under this policy is specifically excess of and will not contribute with any other valid and collectible insurance, unless such other insurance is written specifically as excess insurance over this policy. However, if **you** have purchased a General Liability Coverage Part, rules for how that Coverage Part will be treated when there is other valid and collectible insurance are contained in Section V. Other provisions affecting coverage, D. Other insurance, of that Coverage Part. |
| | | If the same **claim** or **related claims**, **breach**, **event**, or **occurrence** is covered under more than one Coverage Part, **we** will pay only under one Coverage Part, which will be the Coverage Part that provides the most favorable coverage. |
| I. | Subrogation | In the event of any payment by **us** under this policy, **we** will be subrogated to all of **your** rights of recovery to that payment. |
| | | **You** will do everything necessary to secure and preserve **our** subrogation rights, including but not limited to the execution of any documents necessary to allow **us** to bring suit in **your** name. |
| | | **You** will do nothing to prejudice **our** subrogation rights without **our** prior written consent. |
| | | Any recovery first will be paid to **you** up to the amount of any **retention you** have paid, and then to **us** up to the amount of any **covered amounts we** have paid. |
| J. | Titles | Titles of sections of and endorsements to this policy are inserted solely for convenience of reference and will not be deemed to limit, expand, or otherwise affect the provisions to which they relate. |

## VI. Definitions applicable to all Coverage Parts

The following definitions apply to all Coverage Parts **you** have purchased. If the same term is defined here and in a Coverage Part, then the definition in the Coverage Part will govern the coverage provided under that Coverage Part.

**Application**
means the signed application for the policy and any attachments and materials submitted with that application. If this policy is a renewal or replacement of a previous policy issued by **us**, **application** also includes all previous signed applications, attachments, and materials.

**Coverage part limit**
means the amount stated in the Declarations as the aggregate limit applicable to each Coverage Part **you** have purchased which is subject to an aggregate limit.

**Covered amounts**
means any amounts **we** have expressly agreed to pay under any Coverage Part **you** have purchased.

**Employee**
means any past, present, or future:

1.  employee (including any part-time, seasonal, leased, or temporary employee or any volunteer);
2.  partner, director, officer, or board member (or equivalent position); or
3.  independent contractor;

of a **named insured**, but only while in the course of their performance of work or services on behalf of or at the direction of the **named insured**.

**Named insured**
means the individual, corporation, partnership, limited liability company, limited partnership, or other entity identified in Item 1 of the Declarations.

**Policy period**
means the period of time identified in Item 2 of the Declarations, and any optional extension period, if purchased.

**Professional services**
means those services identified as Covered Professional Services under any Coverage Part on the Declarations containing such a description.

Case 1:20-cv-02491    Document 3-1    Filed 03/24/20    Page 52 of 67



## General Terms and Conditions

| | |
|---|---|
| **Related claims** | means all **claims** that are based upon, arise out of, or allege: |

1.  a common fact, circumstance, situation, event, service, transaction, cause, or origin;

2.  a series of related facts, circumstances, situations, events, services, transactions, sources, causes, or origins;

3.  a continuous or repeated act, error, or omission in the performance of **your professional services**; or

4.  the same **breach**, **occurrence**, or offense.

The determination of whether a **claim** is related to another **claim** or **claims** will not be affected by the number of claimants or **insureds** involved, causes of action asserted, or duties involved.

| | |
|---|---|
| **Retention** | means the amount or time identified as such in the Declarations. |
| **Retroactive date** | means the date identified as such in the Declarations. |
| **We**, **us**, or **our** | means the Underwriters identified on the Declarations as issuing this policy. |
| **You**, **your**, or **insured** | means any individual or entity expressly described as an **insured** in any Coverage Part **you** have purchased. |



**Real Estate and Property Managers Professional Liability Coverage Part**

| | |
|---|---|
| **I. What is covered** | **We** will pay up to the **coverage part limit** for **damages** and **claim expenses** in excess of the **retention** for covered **claims** against **you** alleging a negligent act, error, or omission in **your professional services** performed for any property, whether or not owned by **you**, on or after the **retroactive date**, including but not limited to: |

1. failure to disclose;

2. negligent misstatement or negligent misrepresentation; or

3. **personal and advertising injury**,

provided the **claim** is first made against **you** during the **policy period** and is reported to **us** in accordance with Section V. Your obligations.

---

**II. Coverage enhancements**

**We** will also make the following payments:

Bodily injury/property damage sublimit

A. **We** will pay **damages** and **claim expenses** up to the limit stated in the Declarations for any **claim** against **you** for **bodily injury** and/or **property damage**, provided the **claim** is first made against **you** during the **policy period**, it directly results from **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations.

**You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this subsection A, and any payments **we** make will be a part of, and not in addition to, the **coverage part limit**.

Third party discrimination

B. **We** will pay **damages** and **claim expenses** up to the limit stated in the Declarations for any **claim** against **you** for **third party discrimination**, provided the **claim** is first made against **you** during the **policy period**, it directly results from **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations.

**You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this subsection B, and any payments **we** make will be a part of, and not in addition to, the **coverage part limit**.

Open house claim sublimit

C. **We** will pay **damages** and **claim expenses** up to the limit stated in the Declarations for any **open house claim** against **you**, provided the **claim** is first made against **you** during the **policy period**, it directly results from **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations.

**You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this subsection C, and any payments **we** make will be a part of, and not in addition to, the **coverage part limit**.

Failure to disclose pollutants sublimit

D. **We** will pay **damages** and **claim expenses** up to the limit stated in the Declarations for any **failure to disclose pollutants claim** against **you**, provided the **claim** is first made against **you** during the **policy period**, it directly results from **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations.

**You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this subsection D, and any payments **we** make will be a part of, and not in addition to, the **coverage part limit**.

Defense of licensing proceedings

E. **We** will pay up to the limit stated in the Declarations for the reasonable and necessary fees, costs, and expenses incurred with **our** prior consent in the investigation, defense, or appeal of any state, federal, or other licensing board inquiry or proceeding concerning **your** eligibility or license to engage in **your professional services**, provided **you** first receive notice of such inquiry or proceeding during the **policy period**, it relates to **your**

**HISCOX PRO™**    **Real Estate and Property Managers Professional Liability Coverage Part**

**professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations.

No **retention** will apply to amounts **we** pay under this subsection E, and such amounts will be in addition to, and not part of, the **coverage part limit**.

| Subpoena assistance | F. | **We** will pay up to the limit stated in the Declarations for the reasonable and necessary fees, costs, and expenses incurred with **our** prior consent to respond to a subpoena arising from the performance of **your professional services**, provided **you** first receive notice of such subpoena during the **policy period**, it relates to **your professional services** performed on or after the **retroactive date**, and it is reported to **us** in accordance with Section V. Your obligations. |
|---|---|---|

No **retention** will apply to amounts **we** pay under this subsection F, and such amounts will be in addition to, and not part of, the **coverage part limit**.

| Supplemental payments | G. | **We** will pay reasonable expenses, including loss of wages and a $250 travel per diem, incurred by **you** if **we** require **you** to attend depositions, arbitration proceedings, or trials in connection with the defense of a covered **claim**, but **we** will not pay more than an aggregate of $10,000 per **claim** for such expenses, regardless of the number of **insureds**. |
|---|---|---|

No **retention** will apply to amounts **we** pay under this subsection G, and such amounts will be in addition to, and not part of, the **coverage part limit**.

## III. Who is an insured

For purposes of this Coverage Part, **you**, **your**, or **insured** means a named insured, subsidiary, employee, independent contractor, joint venture, or franchisor, as defined below:

**Named insured**

means the individual, corporation, partnership, limited liability company, limited partnership, or other entity identified in Item 1 of the Declarations.

**Subsidiary**

means any entity of which the **named insured** has majority ownership before or during the **policy period**.

**Employee**

means any past, present, or future:

1. person employed by the **named insured** or **subsidiary** as a permanent, part-time, seasonal, leased, or temporary employee, or any volunteer; or

2. partner, director, officer, or board member (or equivalent position) of the **named insured** or **subsidiary**,

but only while in the course of their performance of **professional services** on behalf of or at the direction of such **named insured** or **subsidiary**.

**Independent contractor**

means any person or entity contracted by the **named insured** or **subsidiary** to perform the same **professional services** as the **named insured** or **subsidiary**, but only while in the course of their performance of **professional services** on behalf of or at the direction of the **named insured** or **subsidiary**.

**Joint venture**

means a business enterprise in which the **named insured** or **subsidiary** participates pursuant to a written agreement, but only for:

1. **professional services** performed by the **named insured** or **subsidiary**; and

2. the same percentage of covered **damages** and **claim expenses** as the percentage of the **named insured's** or **subsidiary's** participation in the joint venture.

**Franchisor**

means any real estate franchise corporation of which the **named insured** is a franchisee, but only for the **franchisor's** liability for **your professional services** performed by or on behalf of the **named insured**.



## HISCOX PRO™    Real Estate and Property Managers Professional Liability Coverage Part

### IV. Defense and settlement of claims

**Defense**

**We** have the right and duty to defend any covered **claim**, even if such **claim** is groundless, false, or fraudulent.

**We** have the right to select and appoint counsel to defend **you** against a covered **claim**. **You** may request in writing that **we** appoint defense counsel of **your** own choice, but whether to grant or deny such a request will be at **our** sole discretion.

**Settlement**

**We** have the right to solicit and negotiate settlement of any **claim** but will not enter into a settlement without **your** consent, which **you** agree not to withhold unreasonably. If **you** withhold consent to a settlement recommended by **us** and acceptable to the party who made the **claim**, the most **we** will pay for that **claim** is the sum of:

1.  the amount of **our** recommended settlement;
2.  **claim expenses** incurred up to the date of **our** recommendation;
3.  50% of all **claim expenses** incurred after **our** recommendation; and
4.  50% of all **damages** in excess of the settlement amount recommended by **us**.

### V. Your obligations

**Notifying us of claims and coverage enhancements**

**You** must give written notice to **us** of any **claim**, or any other matter covered under Section II. Coverage enhancements, as soon as possible, but in any event, no later than 60 days after the end of the **policy period**.

All such notifications must be in writing and include a copy of the **claim** or other covered matter, and must be submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations.

**Notifying us of potential claims**

**You** have the option of notifying **us** of **potential claims** that may lead to a covered **claim** against **you**.

In order to do so, **you** must give written notice to **us** as soon as possible and within the **policy period**, and the notice must, to the greatest extent possible, identify the details of the **potential claim**, including identifying the potential claimant(s), the likely basis for liability, the likely demand for relief, and any additional information about the **potential claim we** may reasonably request.

The benefit to **you** of notifying **us** of a **potential claim** is that if an actual **claim** arises from the same circumstances as the properly notified **potential claim**, then **we** will treat that **claim** as if it had first been made against **you** on the date **you** properly notified **us** of it as a **potential claim**, even if that **claim** is first made against **you** after the **policy period** has expired.

All **potential claim** notifications must be in writing and submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations.

**Retention**

**Our** obligation to pay **damages** and **claim expenses** under this Coverage Part is in excess of the **retention**, which **you** must pay in connection with each covered **claim**.

### VI. Exclusions – What is not covered

**We** will have no obligation to pay any sums under this Coverage Part, including any **damages** or **claim expenses**, for any **claim**:

**Antitrust/deceptive trade practices**

1.  based upon or arising out of any actual or alleged:

    a.  false, deceptive, or unfair trade practices;

**HISCOX PRO**™   **Real Estate and Property Managers Professional Liability Coverage Part**

| | | |
|---|---|---|
| | b. | unfair competition, impairment of competition, restraint of trade, or antitrust violations; |
| | c. | violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, all including as may be amended, or any similar federal, state, or local statutes, rules, or regulations in or outside the U.S.; or |
| | d. | deceptive or misleading advertising. |
| Bankruptcy of others | 2. | based upon or arising out of any failure, insolvency, bankruptcy, or financial impairment of: |
| | a. | a sponsor, developer, or builder; or |
| | b. | any financial institution, including but not limited to savings and loans companies, banking institutions, or insurance companies. |
| Bodily injury/property damage | 3. | based upon or arising out of any actual or alleged **bodily injury** or **property damage**; however, this exclusion will not apply to. |
| | a. | **bodily injury** or **property damage** directly resulting from **your professional services** covered under Section II. Coverage enhancements, A; or |
| | b. | an **open house claim** covered under Section II. Coverage enhancements, C. |
| Breach of contract | 4. | based upon or arising out of any actual or alleged breach of any contract or agreement, or any liability of others that **you** assume under any contract or agreement; however, this exclusion will not apply to any liability **you** would have in the absence of the contract or agreement. |
| Breach of warranty/ guarantee | 5. | based upon or arising out of any actual or alleged breach of express warranties or guarantees, including any warranty or guarantee as to the future value of property. However, this exclusion will not apply to any: |
| | a. | warranty or guarantee to perform **your professional services** consistent with applicable industry standards or with reasonable skill or care; or |
| | b. | liability **you** would have in the absence of the warranties or guarantees. |
| Construction management | 6. | based upon or arising out of any actual or alleged performance of or failure to perform construction management services; however, this exclusion will not apply to the incidental hiring of a person or entity to perform regular maintenance as part of **your property management services**. |
| Criminal proceedings | 7. | brought in the form of a criminal proceeding, including but not limited to a criminal investigation, grand jury proceeding, or criminal action. |
| Employment related liability | 8. | based upon or arising out of any actual or alleged: |
| | a. | obligation under any workers' compensation, unemployment compensation, employers' liability, fair labor standards, labor relations, wage and hour, or disability benefit law, including any similar provisions of any federal, state, or local statutory or common law; |
| | b. | liability or breach of any duty or obligation owed by **you** as an employer or prospective employer; or |
| | c. | harassment, wrongful termination, retaliation, or discrimination, including but not limited to adverse or disparate impact |
| | | However, part c of this exclusion will not apply to a covered **claim** for **third party discrimination**. |
| Excluded costs and damages | 9. | to the extent it seeks or includes: |
| | a. | fines, penalties, taxes, or sanctions against **you**; |
| | b. | overhead costs, general business expenses, salaries, or wages incurred by **you**; |
| | c. | the return, reduction, or restitution of fees, commissions, profits, or charges for goods provided or services rendered; |

**HISCOX PRO**™

## Real Estate and Property Managers Professional Liability Coverage Part

|  |  |
|---|---|
|  | d. liquidated or multiple damages; |
|  | e. restitution, disgorgement of profits, any advantage to which **you** were not legally entitled, or unjust enrichment; or |
|  | f. the cost of complying with injunctive relief. |
| Excluded professional services | 10. based upon or arising out of any actual or alleged performance of or failure to perform services as an architect, engineer, accountant, lawyer, insurance agent/broker, registered investment advisor, and/or security broker/dealer; however, this exclusion will not apply to **claims** brought against an **insured** who is an architect, engineer, accountant, lawyer, insurance agent/broker, registered investment advisor, and/or security broker/dealer if the **claim** arises out of the performance of **your professional services**. |
| Excluded property-related services | 11. based upon or arising out of any performance of or failure to perform mortgage banking, mortgage broker, escrow agent, title agent, title abstractor, or real estate appraisal services. |
| Excluded statutory violations | 12. based upon or arising out of any actual or alleged violation of the following laws: |
|  | a. the Securities Act of 1933; |
|  | b. the Securities Exchange Act of 1934; |
|  | c. any state blue sky or securities laws; |
|  | d. the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*; or |
|  | e. the Employee Retirement Income Security Act of 1974, |
|  | all including as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law and any rules or regulations promulgated under such laws. |
| Failure to maintain insurance or bonds | 13. based upon or arising out of any actual or alleged failure to procure or maintain adequate insurance or bonds; however, this exclusion will not apply to **your** failure to procure or maintain insurance for any property **you** manage in the course of **your** performance of **property management services**. |
| Improper billing | 14. based upon or arising out of any actual or alleged inaccurate, improper, or fraudulent billings or invoices, including but not limited to a qui tam action or any action under the False Claims Act, as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law; however, this exclusion will not apply to a **claim** resulting from **your** performance of billing services for others if such services are a part of **your professional services**. |
| Insured vs. insured | 15. brought by or on behalf of one **insured** or **affiliate** against another **insured** or **affiliate**. |
| Intellectual property | 16. based upon or arising out of any actual or alleged infringement, use, or disclosure of any intellectual property, including but not limited to copyright, trademark, trade dress, patent, service mark, service name, title, or slogan, or any publicity rights violations, cyber squatting violations, moral rights violations, any act of passing-off, or any misappropriation of trade secret. |
| Intentional acts | 17. based upon or arising out of any actual or alleged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions, except that: |
|  | a. **we** will pay **claim expenses** until there is a final adjudication establishing such conduct; and |
|  | b. this **exclusion** will not apply to otherwise covered intentional acts or omissions resulting in **personal and advertising injury**. |
|  | This exclusion will apply to the **named insured** or **subsidiary** only if the conduct was committed or allegedly committed by any: |
|  | a. partner, director, officer, or member of the board (or equivalent position) of the **named insured** or **subsidiary**; or |

 **Real Estate and Property Managers Professional Liability Coverage Part**

|  |  |
|---|---|
|  | b.    employee of the **named insured** or **subsidiary** if any partner, director, officer, member of the board (or equivalent position) of the **named insured** or **subsidiary** knew or had reason to know of such conduct by the employee. |

This exclusion will apply separately to each **insured** and will not apply to any **insured** who did not commit, participate in, acquiesce to, or ratify such conduct committed by another **insured**.

| Manufacture of goods/ products | 18. | based upon or arising out of any goods or products manufactured, sold, handled, or distributed by **you**. |
|---|---|---|
| Medical malpractice | 19. | based upon or arising out of any actual or alleged medical malpractice or breach of any duties owed as a healthcare provider, including but not limited to the rendering of or failure to render medical services, treatment, diagnosis, or advice. |
| Misappropriation of funds | 20. | based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of, or failure to safeguard, any funds, monies, assets, or property. |
| Notarization without physical appearance | 21. | based upon or arising out of any actual or alleged notarization, certification, or acknowledgment of a signature without the physical appearance of the person making the signature at the time of such notarization, certification, or acknowledgment. |
| Pollution/environmental | 22. | based upon or arising out of any actual, alleged, or threatened discharge, dispersal, release, or escape of **pollutants**, including any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **pollutants**; however, this exclusion will not apply to any **failure to disclose pollutants**. |
| Prior acts/notice/knowledge | 23. | based upon or arising out of any actual or alleged breach of duty or negligent act, error, or omission that: |

     a.    was committed prior to the **retroactive date**;

     b.    was the subject of any notice given under any other policy of which this policy is a renewal or replacement;

     c.    was the subject of, or is related to, any prior or pending litigation, **claim**, written demand, arbitration, administrative or regulatory proceeding or investigation, or licensing proceeding that was filed or commenced against **you** and of which **you** had notice prior to the **policy period**; or

     d.    **you** had knowledge of prior to the **policy period**, and there was a reasonable basis to believe that the act, error, or omission could result in a **claim**.

However, if this policy is a renewal or replacement of a previous policy **we** issued that provided materially identical coverage, and is part of an unbroken chain of successive policies issued by **us**, the **policy period** referred to in paragraphs c and d, above, will be the policy period of the first such policy **we** issued.

| Privacy | 24. | based upon or arising out of any actual or alleged: |
|---|---|---|

     a.    unauthorized acquisition, access, use, or disclosure of, improper collection or retention of, or failure to protect any non-public personally identifiable information or confidential corporate information that is in **your** care, custody, or control; or

     b.    violation of any privacy law or consumer data protection law protecting against the use, collection, or disclosure of any information about a person or any confidential corporate information, including the performance of any credit check or background check on a person that has not consented to such credit check or background check.

| Property developed/ constructed by insured | 25. | based upon or arising out of any **real estate services** involving real property that was developed or constructed by any **insured** or **affiliate**. |
|---|---|---|
| Real estate syndication | 26. | based upon or arising out of any actual or alleged formulation, promotion, syndication, offer, sale, or management of any limited or general partnership or any interest in such partnership. |

**HISCOX PRO**™    **Real Estate and Property Managers Professional Liability Coverage Part**

| | | |
|---|---|---|
| Sexual misconduct | 27. | based upon or arising out of any actual, alleged, or threatened abuse, molestation, harassment, mistreatment, or maltreatment of a sexual nature, including the negligent employment, investigation, supervision, training, or retention of a person who commits such conduct, or the failure to report such conduct to the proper authorities. |
| Subsidiary outside control of named insured | 28. a. | based upon or arising out of **professional services** performed by or on behalf of a past or present **subsidiary** while the **named insured** does not have majority ownership or management control of it; or |
| | b. | made against a **subsidiary** or anyone acting on its behalf while the **named insured** does not have majority ownership or management control of it. |
| Unsolicited telemarketing | 29. | based upon or arising out of any actual or alleged violation of any federal, state, local, or foreign statutes, ordinances, or regulations relating to unsolicited telemarketing, solicitations, emails, faxes, text messages, or any other communications of any type or nature, including but not limited to the Telephone Consumer Protection Act, CAN-SPAM Act, or any "anti-spam" or "do-not-call" statutes, ordinances, or regulations. |

## VII. Definitions

The following definitions apply to this Coverage Part. Additional definitions are contained in Section III. Who is an insured, and in the General Terms and Conditions, Section VI. Definitions applicable to all Coverage Parts.

**Affiliate**
means any person or entity related to any **insured** through common ownership, control, or management. **Affiliate** does not include a **subsidiary**.

**Bodily injury**
means physical injury, sickness, disease, or death sustained by a person, and any resulting humiliation, mental injury, mental anguish, emotional distress, suffering, or shock.

**Claim**
means any written assertion of liability or any written demand for financial compensation or non-monetary relief.

**Claim expenses**
means the following sums incurred in excess of the **retention** and with **our** prior written consent:

1. all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and experts) incurred in the investigation, defense, or appeal of a **claim**; and

2. premiums on appeal bonds, attachment bonds, or similar bond, but **we** will have no obligation to apply for or furnish any such bonds.

**Damages**
means the following amounts incurred in excess of the **retention**:

1. a monetary judgment or monetary award that **you** are legally obligated to pay (including pre- or post-judgment interest and awards of claimant's attorney fees); or

2. a monetary settlement negotiated by **us** with **your** consent.

**Damages** includes punitive damages to the full extent they are insurable under the law of any applicable jurisdiction that most favors coverage.

**Failure to disclose pollutants claim**
means a **claim** alleging the failure to disclose the existence of **pollutants**.

**Open house claim**
means a **claim** for **bodily injury** and/or **property damage** arising from the showing of property, including but not limited to showings at a property accessed by use of a lock box or other keyless entry system.

**Personal and advertising injury**
means injury, other than **bodily injury** or **property damage**, arising out of one or more of the following offenses:

1. false arrest, detention, or imprisonment;

2. malicious prosecution;

 **HISCOX PRO**™    **Real Estate and Property Managers Professional Liability Coverage Part**

|  |  |
|---|---|
|  | 3. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises; |
|  | 4. slander, libel, or defamation, or disparagement of goods, products, or services, whether in connection with **your professional services** or **your** advertising of it; or |
|  | 5. oral or written publication of material, whether in connection with **your professional services** or **your** advertising of it, that violates a person's right of privacy. |
| **Pollutants** | means any solid, liquid, gaseous, biological, radiological, or thermal irritant or contaminant, including smoke, vapor, asbestos, silica, dust, nanoparticles, fibers, soot, fumes, acids, alkalis, chemicals, nuclear materials, germs, mold, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed. |
| **Potential claim** | means any acts, errors, or omissions of an **insured** or other circumstances reasonably likely to lead to a **claim** covered under this policy. |
| **Professional services** | means: |
|  | 1. **real estate services**; and/or |
|  | 2. **property management services**. |
| **Property damage** | means physical damage to or destruction of any tangible property, including the resulting loss of use of that property. |
| **Property management services** | means: |
|  | 1. development and implementation of management plans and budgets; |
|  | 2. oversight of physical maintenance of property; |
|  | 3. solicitation, evaluation, and securing of tenants, management of tenant relations, collection of rent, and processing evictions; |
|  | 4. development, implementation, and management of loss control and risk management plans for real property; |
|  | 5. development, procurement, implementation, and management of contracts and subcontracts necessary to the daily functioning of real property; |
|  | 6. personnel administration and record keeping; |
|  | 7. leasing services in connection with the property **you** are managing; and/or |
|  | 8. any other services identified as Covered Professional Services under the Real Estate and Property Managers Professional Liability Coverage Part section of the Declarations. |
|  | **Property management services** do not include the management or implementation of renovations or construction or reconstruction projects. |
| **Real estate services** | means real estate agent, broker, and/or leasing services, including any services as a notary public performed in conjunction with such real estate agent, broker, and/or leasing services, and any other services identified as Covered Professional Services under the Real Estate and Property Managers Professional Liability Coverage Part section of the Declarations. |
| **Retention** | means the amount stated as such under the Real Estate and Property Managers Professional Liability Coverage Part section of the Declarations. |
| **Third party discrimination** | means any non-physical harassment of or unlawful discrimination against a person or entity other than an **insured** or an employee of an **insured**, including any resulting violation of civil rights, but only if such harassment or discrimination directly results from **your** performance of **professional services**. |
| **You, your, or insured** | means a **named insured**, **subsidiary**, **employee**, **independent contractor**, **joint venture**, or **franchisor**, as defined in Section III. Who is an insured. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PINE MANAGEMENT, INC.,

                Plaintiff,

  v.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON and CERTAIN LONDON
MARKET COMPANIES SUBSCRIBING TO
CERTIFICATE NO. MPL 1690585.16, and
HISCOX, INC.

                Defendants.

INDEX NO. 650627/2020

***NOTICE OF APPEARANCE***

Please enter my appearance as counsel for the Defendants, CERTAIN UNDERWRITERS

AT LLOYD'S, LONDON, CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO

CERTIFICATE NO. MPL 1690585.16, and HISCOX, INC.

Respectfully submitted,

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,CERTAIN LONDON MARKET
COMPANIES SUBSCRIBING TO
CERTIFICATE NO. MPL 1690585.16, and
HISCOX, INC.

By its attorney,

_____
Christopher J. Yagoobian, N.Y. Reg. #5570718
Peabody & Arnold LLP
11 Broadway, Suite 615
New York, NY 10004
Tel: (646) 448-5250
cyagoobian@peabodyarnold.com

Dated: March 13, 2020

## CERTIFICATE OF SERVICE

    I, Christopher J. Yagoobian, hereby certify that on this 13th day of March 2020, I caused a copy of the foregoing document to be served upon all parties through NYSCEF.

<div align="center">

Dennis J. Nolan, Esq.
Anderson Kill, P.C.
1251 Avenue of the Americas
New York, NY  10020

</div>

_____
Christopher J. Yagoobian

1709091_1
16298-205829

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PINE MANAGEMENT, INC.,

                Plaintiff,

    v.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON and CERTAIN LONDON
MARKET COMPANIES SUBSCRIBING TO
CERTIFICATE NO. MPL 1690585.16, and
HISCOX, INC.

                Defendants.

INDEX NO. 650627/2020

***JOINT STIPULATION OF
DISCONTINUANCE AS TO HISCOX,
INC.***

Pursuant to CPLR § 3217(a)(2), IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned attorneys of record for their respective parties in the above entitled action that, no party hereto is an infant or incompetent person for whom a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action, the above-entitled action be, and the same hereby is, **DISCONTINUED** without prejudice, as to all claims asserted by the Plaintiff against **only** the defendant, Hiscox, Inc. without costs to either party.

[SIGNATURE ON NEXT PAGE]

PINE MANAGEMENT, INC.,

By its attorney,


*/s/ Dennis J. Nolan*
Dennis J. Nolan, NY Reg. # 4462107
Anderson Kill, P.C.
1251 Avenue of the Americas
New York, NY 10020
T: 212-278-1000
dnolan@andersonkill.com


Dated: March 13, 2020

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON,CERTAIN LONDON MARKET
COMPANIES SUBSCRIBING TO
CERTIFICATE NO. MPL 1690585.16, and
HISCOX, INC.
By their attorney,


_____
Christopher J. Yagoobian, NY Reg. #5570718
Peabody & Arnold LLP
11 Broadway, Suite 615
New York, NY 10004
T: 646-448-5250
cyagoobian@peabodyarnold.com

## CERTIFICATE OF SERVICE

I, Christopher J. Yagoobian, hereby certify that on this 13th day of March 2020, I caused a copy of the foregoing document to be served upon all parties through NYSCEF.

Dennis J. Nolan, Esq.
Anderson Kill, P.C.
1251 Avenue of the Americas
New York, NY 10020

_____
Christopher J. Yagoobian

1725329_1
16298-205829

UCS-840
(rev. 07/29/2019)

# REQUEST FOR JUDICIAL INTERVENTION

**SUPREME** COURT, COUNTY OF **NEW YORK**

Index No: **650627/2020**    Date Index Issued: **01/28/2020**

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |

**CAPTION**    Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Pine Management, Inc.

Plaintiff(s)/Petitioner(s)

-against-

Certain Underwriter's at Lloyd's, London and Certain London Market Companies Subscribing to Certificate No. MPL 1690585.16, and HISCOX, INC.,

Defendant(s)/Respondent(s)

Judge Assigned

RJI Filed Date

---

**NATURE OF ACTION OR PROCEEDING**    Check only one box and specify where indicated.

**COMMERCIAL**
- ○ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ○ Contract
- ◉ Insurance (where insurance company is a party, except arbitration)
- ○ UCC (includes sales and negotiable instruments)
- ○ Other Commercial (specify): _____
*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**REAL PROPERTY**    Specify how many properties the application includes: _____
- ○ Condemnation
- ○ Mortgage Foreclosure (specify):    ○ Residential    ○ Commercial
  Property Address: _____
  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ○ Tax Certiorari
- ○ Tax Foreclosure
- ○ Other Real Property (specify): _____

**OTHER MATTERS**
- ○ Certificate of Incorporation/Dissolution    [see NOTE in COMMERCIAL section]
- ○ Emergency Medical Treatment
- ○ Habeas Corpus
- ○ Local Court Appeal
- ○ Mechanic's Lien
- ○ Name Change
- ○ Pistol Permit Revocation Hearing
- ○ Sale or Finance of Religious/Not-for-Profit Property
- ○ Other (specify): _____

**MATRIMONIAL**
- ○ Contested
  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI ADDENDUM (UCS-840M). For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**TORTS**
- ○ Asbestos
- ○ Child Victims Act
- ○ Environmental (specify): _____
- ○ Medical, Dental or Podiatric Malpractice
- ○ Motor Vehicle
- ○ Products Liability (specify): _____
- ○ Other Negligence (specify): _____
- ○ Other Professional Malpractice (specify): _____
- ○ Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- ○ CPLR Article 75 (Arbitration) [see NOTE in COMMERCIAL section]
- ○ CPLR Article 78 (Body or Officer)
- ○ Election Law
- ○ Extreme Risk Protection Order
- ○ MHL Article 9.60 (Kendra's Law)
- ○ MHL Article 10 (Sex Offender Confinement-Initial)
- ○ MHL Article 10 (Sex Offender Confinement-Review)
- ○ MHL Article 81 (Guardianship)
- ○ Other Mental Hygiene (specify): _____
- ○ Other Special Proceeding (specify): _____

---

**STATUS OF ACTION OR PROCEEDING**    Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ◉ | ○ | If yes, date filed: __01/28/2020__ |
| Has a summons and complaint or summons with notice been served? | ◉ | ○ | If yes, date served: __02/05/2020__ |
| Is this action/proceeding being filed post-judgment? | ○ | ◉ | If yes, judgment date: _____ |

---

**NATURE OF JUDICIAL INTERVENTION**    Check one box only and enter additional information where indicated.

- ○ Infant's Compromise
- ○ Extreme Risk Protection Order Application
- ○ Note of Issue/Certificate of Readiness
- ○ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- ○ Notice of Motion    Relief Requested: _____    Return Date: _____
- ○ Notice of Petition    Relief Requested: _____    Return Date: _____
- ○ Order to Show Cause    Relief Requested: _____    Return Date: _____
- ○ Other Ex Parte Application    Relief Requested: _____
- ○ Poor Person Application
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ◉ Other (specify):  SO-ORDERED STIPULATION

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A). | | | | |
|---|---|---|---|---|---|
| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| PARTIES | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A). | | | |
|---|---|---|---|---|
| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: Pine Management, Inc.<br>Role(s): Plaintiff | Dennis J. Nolan, Anderson Kill P.C., 1251 Avenue of the Americas, NY, NY 10020<br>(212) 278-1000; dnolan@andersonkill.com | ○ YES    ○ NO | |
| ☐ | Name: CERTAIN UNDERWRITERS AT LLOYD'S, LONDON<br>Role(s): Defendant | Christopher J. Yagoobian, Peabody & Arnold LLP, 11 Broadway, Suite 615, NY, NY 10004, (646) 448-5250, cyagoobian@peabodyarnold.com | ◉ YES    ○ NO | |
| ☐ | Name: CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO CERTIFI<br>Role(s): Defendant | Christopher J. Yagoobian, Peabody & Arnold LLP, 11 Broadway, Suite 615, NY, NY 10004, (646) 448-5250, cyagoobian@peabodyarnold.com | ◉ YES    ○ NO | |
| ☐ | Name: HISCOX, INC.<br>Role(s): Defendant | Christopher J. Yagoobian, Peabody & Arnold LLP, 11 Broadway, Suite 615, NY, NY 10004, (646) 448-5250, cyagoobian@peabodyarnold.com | ◉ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |
| ☐ | Name:<br>Role(s): | | ○ YES    ○ NO | |

I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.

Dated: _____03/17/2020_____

_____
Signature

_____4462107_____
Attorney Registration Number

Dennis J. Nolan
Print Name